# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE RAYMOND BOUDREAU,<br><br>        Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:15-cv-00088-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(ECF Nos. 22, 23, 24)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Plaintiff Maurice Raymond Boudreau ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for a period of disability and disability benefits pursuant to the Social Security Act. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Plaintiff suffers from post-traumatic stress disorder ("PTSD"), major depressive disorder, polysubstance abuse (cannabis, alcohol, and methamphetamine) in early or partial remission, dependent and passive-aggressive traits, and mood disorder not otherwise specified. For the reasons set forth below, the Court recommends that Plaintiff's Social Security appeal be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 19, 2012, alleging disability beginning November 11, 2001. (AR 184-192.) Plaintiff's applications were initially denied on December 11, 2012, and denied upon reconsideration on May 31, 2013. (AR 77-80, 83-87.) Plaintiff requested and received a hearing before Administrative Law Judge Trevor Skarda ("the ALJ"). Plaintiff appeared telephonically for a hearing on May 8, 2014. (AR 42-59.) On July 22, 2014, the ALJ found that Plaintiff was not disabled. (AR 19-37.) The Appeals Council denied Plaintiff's request for review on November 14, 2014. (AR 3-5.)

### A. Hearing Testimony

Dr. Nancy Winfrey, a psychologist, testified as a medical expert at the hearing. (AR 45-56.) Plaintiff has PTSD, major depressive disorder, dependent in passive aggressive traits, mood disorder, not otherwise specified and alcohol dependent with no qualifier, and early partial remission poly substance abuse including cannabis abuse and alcohol dependence. (AR 46-47.)

Plaintiff has not met or equaled any of the listings since 2001. (AR 48.) The ratings are the same without 12.09 (substance abuse). (AR 48.) He has had bits and pieces of being sober and maybe can seek treatment or have treatment consistently enough to know exactly when those times were that he was sober. (AR 48.) Plaintiff has a moderate limitation in activities of daily living. (AR 48.) In 2007, Plaintiff was able to do activities of daily living and self-care without any problems, but he has had times when he has not been on medication and that is the most serious issue in regard to the activities of daily living. (AR 48-49.) Plaintiff has moderate limitation in social limitation with and without 12.09. (AR 49.) Dr. Winfrey recognized that Plaintiff pulled a knife while under the influence of alcohol, but found that incident is pretty isolated. (AR 49.) Plaintiff's anxieties can be provoked under certain social situations. (AR 49.) Plaintiff has a moderate limitation in concentration, persistence, and pace based on Plaintiff's self-report and his concentration issues are exacerbated by his alcohol and drug use. (AR 49-50.) He had an episode of decompensation from May 25, 2008, through June 6, 2008,

but that was related to the use of substances.  (AR 50.)

For functional limitations with and without 12.09, Plaintiff is at risk for episodes of anger, so he should have a job that is not very stressful, does not question him a lot like his old work did, and he should not face any situations that could provoke PTSD symptoms, such as those smells and sounds that provoke his PTSD.  (AR 50-51.)  For cognitive ability, he could do something in between simple and complex instructions.  (AR 50-51.)  He could do simple, routine, and repetitive tasks.  (AR 51.)  He possibly could do some complex tasks.  (AR 51.)

There are some pieces of information that imply that he was not accessing treatment options because he was drinking or doing drugs, though it was hard to say which was coming first and causing the other.  (AR 52.)

Plaintiff's combined condition would cause him to have some days that are worse than others.  (AR 53.)  Not considering Plaintiff's drug and alcohol problems, Plaintiff should be able to get to work on time when he is taking his medications consistently.  (AR 53-54.)  There was nothing in the record when Plaintiff was not abusing drugs and alcohol that would support Plaintiff's allegations that he would have trouble getting to work on time.  (AR 54.)  When he was in treatment for a while, he talked about finding a job and he felt hopeful about finding a job when he was sober.  (AR 54.)  Not considering Plaintiff's drug and alcohol problems, Plaintiff would be able to be successful and would not have days where he would have to leave the workplace unless something came up that triggered the symptoms.  (AR 54-55.)

Plaintiff was not always using drugs and alcohol during the relevant period.  (AR 55.)  When Plaintiff was receiving treatment, some of which was residential, he was clean and sober.  (AR 55.)  Plaintiff was not sober for a year-long period and probably not for a six-month period during the relevant period.  (AR 55.)

The Vocational Expert ("VE") Stephen Schmidt also testified at the hearing.  (AR 57-58.)

**B.    ALJ Findings**

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2007.

- Plaintiff has not engaged in substantial gainful activity since November 11, 2001, the

alleged onset date.

- Plaintiff has the following severe impairments: PTSD, major depressive disorder, polysubstance abuse (cannabis, alcohol, and methamphetamine) in early or partial remission, dependent and passive-aggressive traits, and mood disorder not otherwise specified.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

- After careful consideration of the entire record, based on all of the impairments, including the substance use disorders, Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, routine and repetitive tasks. He is limited to low stress work, which is defined as having no more than occasional decision-making or work setting changes. He is limited to occasional interaction with the public. He is limited to jobs where an essential function of the job description does not include interacting with the public on the phone or in person. He can occasionally interact with coworkers. On an infrequent, but irregular basis, he will leave work for up to 1/3 of the workday on an unexcused basis up to four times per month.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on February 3, 1954, and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Plaintiff's acquired job skills do not transfer to other occupations within the RFC defined above.

- Considering Plaintiff's age, education, work experience, and RFC based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- If Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, the

claimant would continue to have a severe impairment or combination of impairments.

- If Plaintiff stopped the substance abuse, Plaintiff would have the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, routine and repetitive tasks. He is limited to low stress work, which is defined as having no more than occasional decision-making or work setting changes. He is limited to occasional interaction with the public. He is limited to jobs where an essential function of the job description does not include interacting with the public on the phone or in person. He can occasionally interact with coworkers.

- If Plaintiff stopped the substance abuse, he would continue to be unable to perform past relevant work.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.

- If Plaintiff stopped the substance abuse, considering Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform.

- The substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(AR 21-36.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." <u>Hill v. Astrue</u>, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955 (9th Cir. 2002) (quoting <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom allegations, failing to include in the RFC all the limitations opined by Dr. Winfrey, failing to give legally adequate reasons for rejecting Dr. J.A. Moses's report, and failing to consider a GAF score from October 2008.[1]

Defendant counters that the ALJ provided sufficient reasons for rejecting Plaintiff's symptom allegations and the ALJ properly evaluated the medical opinion evidence.

### A.    Dr. Moses's Opinion

First, the Court addresses the opinion of Dr. Moses, who interpreted results of an examination of Plaintiff's cognitive functioning performed while Plaintiff was a psychiatric inpatient. Plaintiff asserts that the ALJ erred by not discussing and accepting or rejecting Dr. Moses's opinion from June 2008, which is six months after Plaintiff's date last insured ("DLI"). Defendant counters that the ALJ had no obligation to discuss this examination report because the ALJ only has to discuss significant and probative evidence. Defendant contends that Dr. Moses's opinion was not significant or probative evidence on the issue of whether Plaintiff was disabled prior to December 31, 2007. Defendant asserts that Dr. Moses had no knowledge of Plaintiff's condition during the relevant period because Dr. Moses did not examine Plaintiff prior to the DLI.

On June 30, 2008, Dr. James Moses signed his report that was authored on June 6, 2008,

---

[1] Plaintiff's argument regarding consideration of the October 2008 GAF score was presented in a footnote.

1    and appears to be based on an examination on June 6, 2008.[2]  (AR 531-538.)

2          Plaintiff reported that he had smoked marijuana consistently about 2 to 3 times a week,

3    but had not smoked in the past 3 years.   (AR 533.)   He stated that he had not used

4    methamphetamine for the past 3 years, but prior to that, he used it once a month for 4 years.  (AR

5    533.)  He denied alcohol use.  (AR 533.)

6          Plaintiff was tested on intelligence, speech and language, attention and working memory,

7    visual scanning and motor speed, processing speed, visual-constructional and visual-spatial

8    perception, verbal and visual memory, global intellectual functioning, abstract reasoning,

9    executive functioning, and mood.  (AR 534-536.)  Dr. Moses summarized the test results by

10   saying that Plaintiff's pre-morbid estimates of intellectual functioning appeared to fall in the low

11   average to average range and he did display significantly more difficulty with processing speed

12   and working memory.  (AR 536.)  Dr. Moses noted that it is likely that Plaintiff's deficits on

13   other memory measures were decreased from depleted mental efficiency and limited attention

14   span and working memory.  (AR 536.)

15         Dr. Moses noted that Plaintiff's cognitive complaints and results on testing suggest that

16   he is experiencing disruption in cognitive functioning from elevated levels of depression and

17   anxiety.  (AR 536.)  Dr. Moses also noted that it is possible that Plaintiff is displaying some mild

18   effects of cerebral dysfunction from past use of substances and he strongly recommended

19   continued sobriety to prevent any further impact on cognition.   (AR 531.)   He found that

20   Plaintiff's profile and pattern of performance do not currently suggest a neurodegenerative

21   process.  (AR 532.)  Plaintiff was diagnosed with PTSD by history and chronic major depressive

22   disorder.  (AR 532.)  Plaintiff had a GAF of 50.  (AR 532.)

23         Dr. Moses encouraged Plaintiff to continue receiving treatment for his depression and

24   PTSD.  (AR 537.)  Dr. Moses found that Plaintiff may benefit from consulting with a vocational

25   counselor at a local community college to gain a sense of a vocation that may be better for him

_____

26   [2] The Court notes that Dr. Moses's report says that the examination was conducted on May 16, 2008.  (AR 531.)
     However, this appears to be a typographical error.  There are no treatment notes in the record that indicate that an
27   examination was performed on May 16, 2008.  There is a neuropsych assessment note that is cosigned by Dr. Moses
     on June 6, 2008, that indicates that Plaintiff was seen for a neuropsychological assessment prior to his scheduled
28   discharge from the 2B1 unit at the hospital on June 6, 2008.  (AR 549.)

than real estate.  (AR 537.)  Plaintiff may benefit from using associative linkages when encoding information, he should link new information in as many ways as possible to already known information, he may benefit from rehearsal or repeating information verbally presented, and he can repeat directions aloud to himself to ensure he understands and remembers them.  (AR 537.)  Plaintiff may also benefit from clustering information semantically by meaning.  (AR 537.)  He should be encouraged to visualize information that must be remembered.  (AR 537.)  He should ask for written directions when starting a new task and should be encouraged to use external memory sources.  (AR 537.)  He should be encouraged to allow enough time to review and recheck his work carefully.  (AR 538.)

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)).  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

The Ninth Circuit determined that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations omitted).  Rather, the ALJ must explain only "why significant probative evidence has been rejected."  Vincent on Behalf of Vincent v.

1  Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984); see also Flores v. Shalala, 49 F.3d 562, 570–71

2  (9th Cir. 1995) (the ALJ "may not reject significant probative evidence without explanation").

3      Defendant is correct that the Ninth Circuit determined in Vincent that an ALJ does not

4  have to discuss why he or she is rejecting a letter from a psychiatrist who did not see the

5  claimant after his alleged onset date of disability.  See Vincent, 739 F.3d at 1395.

6      However, after the Vincent decision, the Ninth Circuit addressed the issue of a

7  psychologist's opinion who did not examine a claimant until after the plaintiff's DLI.  See Lester

8  v. Chater, 81 F.3d 821 (9th Cir. 1995).  In Lester, a doctor examined the plaintiff over a year

9  after the DLI.  Lester, 81 F.3d at 825-826.  In discussing the ALJ's note that the doctor's report

10  was completed after the plaintiff's DLI, the Ninth Circuit stated that "[t]his court has specifically

11  held that 'medical evaluations made after the expiration of a claimant's insured status are

12  relevant to an evaluation of the preexpiration condition.' "  Id. at 832 (quoting Smith v. Bowen,

13  849 F.2d 1222, 1225 (9th Cir. 1988)).  In a footnote, the Ninth Circuit addressed the

14  Commissioner's reliance on Vincent to support the argument that the ALJ could reject the

15  doctor's opinion because the doctor examined the plaintiff after the DLI.  Lester, 81 F.3d at 832

16  n. 10.  The Ninth Circuit stated that the Commissioner took the remark in Vincent that "[a]fter-

17  the-fact psychiatric diagnoses are notoriously unreliable" out of context.  Id.  The Ninth Circuit

18  explained that "Vincent thus does not stand for the proposition that the Commissioner is entitled

19  to reject the treating or examining psychologist's opinion, merely because the onset date of

20  disability was before the first date on which the psychologist saw the claimant."  Id.

21      Defendant is also correct that the Ninth Circuit noted that "[t]he opinion of a psychiatrist

22  who examines the claimant after the expiration of his disability insured status, however, is

23  entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous

24  exam."  Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (citing Lombardo v. Schweiker, 749

25  F.2d 565, 567 (9th Cir. 1984) (per curiam)).  In Macri, the Ninth Circuit found that "[b]ecause

26  [the psychiatrist] examined and diagnosed [the plaintiff's] depression well after his injury and

27  the expiration of his disability insured status, it affords little weight and is not reliable."  Macri,

28  93 F.3d at 545 (citing Lombardo, 749 F.2d at 567).

An ALJ's rejection of a treating source opinion given after the DLI was affirmed where among the reasons provided, the ALJ found that it was not proper for the doctor's opinion to be based on an exam after the DLI because there had been an intervening car accident between the DLI and the exam that aggravated the claimant's condition. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

Where the issue in a case was the onset date of a claimant's disability and a doctor did not actually examine the claimant until two years after the onset date he opined, an ALJ reasonably found the reports of doctors who examined the claimant during that two-year period more persuasive than the conjecture of the doctor who did not examine her until two years later. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 754-755 (9th Cir. 1989).

Here, Dr. Moses's report is based on an examination that was after the DLI. However, it does not appear that there has been an intervening event that would cause Dr. Moses's report to not be probative evidence, such as the car accident in <u>Johnson v. Shalala</u>. Defendant asserts that Dr. Moses's report does not reflect Plaintiff's functioning when abstinent from substance abuse because Plaintiff struggled with substance abuse in mid-2008. However, the examination that Dr. Moses supervised was on June 6, 2008, which was the day Plaintiff was discharged from a hospitalization that began on May 25, 2008. (AR 549, 389-394.) The ALJ even noted in his decision that during that hospitalization, Plaintiff's had received medication and was sober. (AR 26, 33.)

Dr. Moses's report was approximately six months after the DLI and there were no opinions rendered by a treating or examining physician during the relevant period. The other opinions in this matter were all rendered after the DLI. While Dr. Winfrey's opinion was based on a review of the medical evidence during the relevant period, she testified as a non-examining doctor at the hearing after the DLI. Defendant contends that Dr. Winfrey's opinion is the most complete and accurate because she reviewed the entire record and offered an assessment of what Plaintiff could do in a work setting. The ALJ may decide that Dr. Winfrey's opinion is entitled to more weight than Dr. Moses's opinion. However, it will be up to the ALJ to weigh the opinions of Dr. Winfrey and Dr. Moses and provide proper reasons for the weight given. The

Court also notes that Dr. Winfrey admitted that she concentrated her review on the parts of the record that were before the DLI. (AR 55.)

Defendant also asserts that Dr. Moses did not indicate that Plaintiff's memory and concentration deficits would have prevented Plaintiff from performing the range of work that the ALJ found. Defendant contends that Plaintiff does not demonstrate how Dr. Moses's test results would affect Plaintiff's ability to perform simple, low stress work. The Court recognizes that the RFC findings need not be identical to the relevant limitations but must be consistent with them. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). However, it is not clear that all of Dr. Moses's opinion has been translated into the RFC. It was for the ALJ to determine whether to accept or reject the limitations opined by Dr. Moses and if the ALJ accepted the limitations, the ALJ should have determined whether Plaintiff could perform substantial gainful activity with those limitations. As an example of part of Dr. Moses's report that may not be translated into the RFC, the Court notes that Dr. Moses recommended that Plaintiff ask for written directions when starting a new task.

Therefore, the Court finds that the ALJ erred by failing to explain the weight he afforded Dr. Moses's report and failing to give at least specific and legitimate reasons supported by substantial evidence for discrediting any portion of Dr. Moses's report.

**B.    Dr. Winfrey's Opinion**

Next, the Court addresses Plaintiff argument that the ALJ erred by not accepting all parts of Dr. Winfrey's opinion and not providing adequate reasons for the parts he rejected. Plaintiff contends that the ALJ should have included a restriction regarding PTSD triggers and having a job where he is not questioned. Plaintiff also contends that there was an evidentiary gap because there were not many mental status examinations from the period at issue and Dr. Winfrey should have considered Dr. Moses's opinion.

Defendant counters that the ALJ did accept all of Dr. Winfrey's opinion. Defendant contends that Dr. Winfrey disagreed with Plaintiff's attorney at the hearing that PTSD triggers would prevent Plaintiff from completing a normal workday or workweek or prevent her from

attending work on time. Defendant also argues that the ALJ reasonably interpreted Dr. Winfrey's testimony to allow simple, low-stress work with limited interaction with others and the Court should defer to the ALJ's reasonable interpretation.

In reply, Plaintiff asserts that there is no indication in Dr. Winfrey's testimony that work that has no more than occasional decision-making or work setting changes is the only kind of stressful work Plaintiff should avoid.

The Court first addresses Plaintiff's assertion that there were not many mental examinations during the relevant period and the evidentiary gap could have been filled if Dr. Winfrey had been allowed to consider the results of the cognitive functioning testing performed by Dr. Moses six months after Dr. Moses's report. While Plaintiff contends that Dr. Winfrey should have considered the objective testing performed by Dr. Moses performed after the DLI, Plaintiff's attorney had the opportunity to ask Dr. Winfrey about the testing results at the hearing. Plaintiff's attorney started to ask Dr. Winfrey about a questionnaire from Dr. Rowe from October 2012, but then Plaintiff's attorney switched to questions about the "whole of the record." (AR 52-53.) Plaintiff had the opportunity to question Dr. Winfrey about the objective testing performed by Dr. Moses, but he did not. The Court next addresses whether there are parts of Dr. Winfrey's opinion that the ALJ did not provide sufficient reasons for rejecting.

The following are relevant excerpts from Dr. Winfrey's testimony during the hearing:

Q:      And I know you said he doesn't meet or equal, but could you opine to reasonable medical certainty as to functional limitations based on the records that you reviewed?

A:      Well, I think functionally speaking he's at risk for episodes of anger, so he should have a job that's not very stressful, doesn't really question him a lot like evidently his old work did and certainly shouldn't face any situations that could provoke PTSD symptoms, so for example, whatever those smells and sounds are for sure. I can't specify more than that because there wasn't enough information in the record.
. . .
Q:      Well, let me ask you this. Could he in your opinion based on the records you reviewed do a simple routine and repetitive task?

A:      Yes.

Q:      With this –

A:      I think he could do more than that.

Q:     And maybe some complex tasks?

A:     I think so.

Q:     But we have to take into consideration those other limitations related to work that wasn't stressful[?]

A:     Yes.

Q:     Wasn't very stressful.  Okay. Where he's not pressured and then anything else?

A:     That's it.

. . .

Q:     Okay. Now the same question without the 12.09 DANA issues, do you see him at work if he's five days a week, eight hours a day having days where the anxiety/depression would cause him to have to leave the workplace because even doing work that you have to be consistent with would be too much for him?

A:     Not basically.  You know, again, it's something that came up that triggered the symptoms.  That would be a good story, but in a kind of usual regular way, no.  I think that he would be able to be successful.

(AR 50-55.)

Defendant is correct that Dr. Winfrey opined that Plaintiff could handle low stress work and simple and some complex tasks.  However, the ALJ testified that Plaintiff should have a job that does not question him a lot and he should not face situations that would provoke his PTSD symptoms, such as those smells and sounds that trigger his PTSD.[3]  (AR 50.)  In the ALJ's decision, the ALJ himself states that Dr. Winfrey "opined the claimant is limited to low stress work secondary to his risk of anger outbursts; must avoid PTSD triggers; and can perform at least simple, routine and repetitive tasks, and some complex tasks (Hearing Testimony)."  (AR 34-35.)

The RFC findings need not be identical to the relevant limitations but must be consistent with them.  <u>Turner</u>, 613 F.3d at 1223; <u>Stubbs-Danielson</u>, 539 F.3d at 1174.  While Defendant is asserting that "Dr. Winfrey's testimony accommodated Plaintiff's PTSD symptoms by limiting him to low-stress work," the Court is unable to determine that the RFC of low stress work is

---

[3] In his reply, Plaintiff contends that the record indicates his PTSD triggers included sounds that came from behind him, loud noises, knocking on the door, and smells and sounds.  (AR 269, 405, 552.)

consistent with Dr. Winfrey's opinion that Plaintiff should avoid PTSD triggers, such as certain smells and sounds, and not being questioned. Contrary to Defendant's assertion, Dr. Winfrey did not testify that Plaintiff's PTSD triggers would not prevent Plaintiff from completing a normal workday or workweek or not prevent him from attending work on time. (AR 54-55.) Dr. Winfrey testified that "in a kind of usual regular way" Plaintiff would not have to leave the workplace because of his anxiety/depression, but also mentioned that "[y]ou know, again it's something that came up that triggered the symptoms." (AR 54-55.) There is also no opinion from a doctor that Plaintiff avoiding PTSD triggers such as smells and sounds means that Plaintiff can perform low stress work, which the ALJ defined as having no more than occasional decision-making or work setting changes. There is no opinion that a job that does not question Plaintiff a lot translates to low stress work. Further, as Plaintiff points out, there is no indication that Dr. Winfrey's opinion that Plaintiff is limited to low stress work translates to work that requires no more than occasional decision-making or work setting changes.

The ALJ gave great weight to Dr. Winfrey's opinion and did not provide any reasons for rejecting parts of the opinion or explaining and supporting how parts were properly translated into the RFC. Therefore, the Court finds that the ALJ erred by not providing reasons for rejecting parts of Dr. Winfrey's opinion.

### C. Plaintiff's Credibility

Plaintiff asserts that the only reason provided by the ALJ for discrediting him was that he was not compliant with his treatment regimen. Plaintiff contends that the ALJ erred in discrediting him because a failure to seek treatment for psychiatric impairments cannot be used against a plaintiff.

Defendant counters that the ALJ properly rejected Plaintiff's subjective symptom allegations because they are inconsistent with his lack of treatment, Plaintiff improved when he complied with prescribed treatment, and Plaintiff had normal mental status examinations, especially when compliant with treatment.

In reply, Plaintiff asserts that Plaintiff's noncompliance with treatment was a manifestation of his PTSD symptoms and not his personal preference.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district

court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

Here, Plaintiff did not testify at the hearing before the ALJ. Therefore, Plaintiff's subjective symptom allegations are based on a field office disability report (AR 252-255), an adult disability report (AR 256-262), and a function report (AR 263-271).

In Plaintiff's field office disability report, Plaintiff alleged he was disabled starting November 11, 2001. (AR 252.) In Plaintiff's adult disability report, he indicated that his ability to work is limited because of his PTSD, depression, and anxiety, and he is suicidal. (AR 257.)

Plaintiff completed a function report on October 2, 2012. (AR 263-271.) Plaintiff alleged that he could not work because of anxiety, depression, and feeling overwhelmed. (AR 263.) He also stated that he cannot concentrate, cannot stay focused, can be defensive, can be argumentative, he has trust issues, he is easily agitated, he feels helpless or hopeless, he has fits of rage, he has bad mood swings, and he has an irregular sleep schedule and wakes often. (AR 263.) He takes medications and they do not cause side effects. (AR 270.)

During the day, he sits at home, waters the yard with a hose, and sometimes watches old movies. (AR 264.) He does not spend time with anyone and does not even attend holidays and birthday parties. (AR 264, 267.) He has no problem with personal care. (AR 264.) He prepares his own meals, such as sandwiches, fast food, and frozen food. (AR 265.) He cleans the floors for a half hour once or twice a month, does laundry for an hour once or twice a month, and does yardwork. (AR 265.) He goes outside in his yard one or two hours a day. (AR 266.) He does not do household repairs, iron clothes, or mow the yard. (AR 265.) When he goes out, he walks, rides a bicycle, and uses public transportation. (AR 266.) He does not drive because traffic makes him feel very nervous and causes stress and anxiety. (AR 266.) He shops for food in stores for 30 minutes to an hour, but crowds make him uneasy. (AR 266.) He is able to pay bills, count change, and use a checkbook/money orders. (AR 266.) He has lost all interest in his hobbies and playing sports. (AR 267.) On a regular basis, he isolates at home and avoids contact with others because people upset him. (AR 267.) He has problems getting along with others because he gets agitated, mad, inattentive, and unfocused. (AR 268.)

His conditions affect his ability to talk, hear, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (AR 268.) He has mood swings, gets angry, gets defensive, and has racing thoughts. (AR 268.) He has issues paying attention because his thoughts race. (AR 268.) He does not finish what he starts. (AR 268.) It is difficult for him to follow written directions because he gets mixed up and overwhelmed. (AR 268.) When he receives verbal instructions, he has a hard time concentrating, his thoughts drift, he gets upset, his anxiety builds, and he feels like walking away. (AR 268.) He does not get along with or trust authority figures. (AR 269.) He has been fired from a job because of problems getting along with other people. (AR 269.) He gets overwhelmed by stress and avoids stressful situations. (AR 269.) He has no routine and is unorganized. (AR 269.)

Here, the ALJ found that if Plaintiff stopped the substance abuse, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible to the extent they are inconsistent with the RFC for the reasons explained. (AR 34.) The ALJ found that the fact that Plaintiff has not been entirely compliant in following recommended treatment suggests that his symptoms may not have been as limiting as he has alleged in his application for disability benefits. (AR 34.) The ALJ pointed out that Plaintiff had failed to maintain his sobriety and follow-up with mental health appointments and Plaintiff had increased symptoms because of his repeated failures at taking his psychotropic medication as instructed. (AR 34.) The ALJ also concluded that Plaintiff's mental symptoms improved with treatment. (AR 34.) The ALJ noted in his decision that Plaintiff's "mental symptoms significantly improved with treatment and any exacerbations in his mental impairments coincided with his noncompliance with prescribed medication, failure to attend mental counseling and periods of substance abuse." (AR 32.) The ALJ also noted that "the medical record does not support [Plaintiff's] allegations of disabling mental symptoms." (AR 32.)

Here, as discussed above, the Court has found that the ALJ erred in not addressing Dr. Moses's opinion and not providing reasons for rejecting parts of Dr. Winfrey's opinion. When

the ALJ considers Dr. Moses's opinion and Dr. Winfrey's full opinion on remand, the ALJ's evaluation of all or parts of Plaintiff's subjective symptom allegations may change.

The Court recognizes that this is a unique case in that Plaintiff filed the application for a period of disability and disability insurance benefits almost five years after the DLI and almost eleven years after the alleged disability date. There was no consultative examination in this matter. The agency reviewing psychiatrists opined that there was insufficient evidence to determine the severity of Plaintiff's mental impairments secondary to his drug and alcohol abuse, but the ALJ found that the medical record is sufficiently developed to make these determinations and gave their opinions no weight. (AR 35.) The only medical opinions in the record are by Dr. Winfrey, Dr. Moses, and Dr. Ashok Rao, a treating psychiatrist, who submitted a medical source statement dated October 2012.[4] Dr. Moses's opinion is based on the only detailed cognitive testing in the record, so it may be especially relevant to the ALJ's determination of Plaintiff's credibility concerning cognitive functioning.

Therefore, the Court declines to address Plaintiff's credibility because it may change when the ALJ considers Dr. Winfrey's full opinion and Dr. Moses's opinion.

**D.** **Plaintiff's GAF Score in October 2008**

Plaintiff asserts in a footnote in his opening brief that the ALJ should have addressed and given reasons for rejecting that he was seriously impaired at discharge from the hospital in October 2008 as shown by his GAF of 50. While the Court will address this argument in this instance, Plaintiff's counsel is advised that arguments should be set forth in the body of the opening brief and not in footnotes.

Plaintiff points to an inpatient treatment record showing a GAF of 50 on Page 374 of the Administrative Record. (AR 374.) This treatment record is the October 20, 2008 discharge summary for Plaintiff's September 22, 2008-October 20, 2008 hospitalization. (AR 374.) The diagnoses at discharge are alcohol dependence, methamphetamine dependence, and cannabis abuse, which are all in early full remission. (AR 374.) Plaintiff did have a GAF of 50 at

---

[4] The Court notes that the ALJ gave little weight to Dr. Rao's opinion and Plaintiff does not challenge that determination.

discharge. (AR 374.) GAF scores between 41 and 50 indicate serious symptoms or any serious impairment in social, occupational, or school functioning. <u>Garrison</u>, 759 F.3d at 1003 n.4; <u>see also</u> <u>Vanbibber v. Carolyn</u>, No. C13-546-RAJ, 2014 WL 29665, at *1 (W.D. Wash. Jan. 3, 2014) (quoting DSM-IV at 32) (a GAF range of 41–50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).").

While Plaintiff wanted the ALJ to specifically address this GAF score, the Ninth Circuit has stated in unpublished opinions that an ALJ did not err by failing to address a doctor's GAF score. <u>Hughes v. Colvin</u>, 599 F.App'x 765, 766 (9th Cir. 2015) (unpublished); <u>McFarland v. Astrue</u>, 288 F.App'x 357, 359 (9th Cir. 2008) (unpublished). GAF scores are relevant and may be considered by the ALJ in considering the claimant's general functional abilities. <u>Graham v. Astrue</u>, 385 F.App'x 704, 706 (9th Cir. 2010). "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.' " <u>McFarland</u>, 288 F.App'x at 359 (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)).

Therefore, while an ALJ may consider a GAF score in considering a claimant's abilities, an ALJ does not need to accept or reject a GAF score. Thus, the Court finds that the ALJ did not err in not specifically addressing, and providing reasons for rejecting the GAF score of 50 on October 20, 2008.

### E.    Remand for Further Administrative Proceedings

In his opening brief, Plaintiff makes a general request for remand for payment of benefits. In his reply brief, Plaintiff expands upon this general request and states that if his testimony is properly credited, he is disabled as a matter of law because he cannot perform sustained work in a competitive work environment. Defendant argues that if the Court does not affirm the ALJ's decision, then remand for further proceedings is proper.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record

before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, the ALJ did not provide sufficient reasons for rejecting parts of Dr. Winfrey's opinion and did not address the weight given to Dr. Moses's opinion. On remand, the ALJ can clarify whether all of the limitations opined by Dr. Winfrey have been translated into the RFC and explain any why any are not being translated into the RFC. Further, it is unclear what sounds and smells trigger Plaintiff's PTSD and what effect the triggers would have on Plaintiff's ability to perform substantial gainful activity. In addition, it is unclear the effect of Dr. Moses's

opinion on Plaintiff's RFC and ability to perform substantial gainful activity. The ALJ will also need to reconsider Plaintiff's credibility in light of Dr. Moses's opinion and Dr. Winfrey's opinion.

Further, the record as a whole provides serious doubt that Plaintiff is in fact disabled if Plaintiff stopped the substance use. The ALJ pointed out that Plaintiff's symptoms improved with medication when he was hospitalized in March 2005. (AR 32, 399-405.) Plaintiff then attended a substance abuse treatment program, where he exhibited less depression and engaged appropriately with his peers. (AR 32, 573-595.) His mental status examination at discharge documented pleasant demeanor, cooperative behavior, euthymic mood, appropriate affect, normal speech, linear thought processes and grossly intact cognition. (AR 32, 575-576.) Plaintiff denied suicidal ideation, homicidal ideation, and hallucinations. (AR 32, 576.) He had a GAF of 55 at the end of the program and it was noted that he did well and was a leader in the community. (AR 574.)

Plaintiff was heavily intoxicated at the time of his February 2007 suicide attempt. (AR 33, 541.) The ALJ found that Plaintiff has not attempted suicide during periods of extended sobriety. (AR 33, 331-754, 756-1184.) The ALJ pointed out that Plaintiff had increased marital problems with his wife during the time when he increased his drinking in September 2007. (AR 33, 558-560.)

In April 2007, even when Plaintiff was out of his psychotropic medication, there was no evidence of psychosis. (AR 33, 563.) In September 2007, Plaintiff was alert, not in distress, oriented, no sign of marked personal neglect, and he was able to sustain conversation without any sign of psychosis. (AR 558.) He denied suicidal and homicidal ideation, had fair impulse control, denied auditory and visual hallucinations, and was not delusional or paranoid. (AR 558.) He was able to attend to himself and his activities of daily living. (AR 558.) He had a GAF of 55. (AR 558.)

Therefore, the Court recommends that this matter should be remanded for further administrative proceedings.

///

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ erred by not providing sufficient reasons for rejecting parts of Dr. Winfrey's opinion and by not addressing Dr. Moses's opinion. The Court also finds that the ALJ should reevaluate Plaintiff's credibility on remand in light of Dr. Moses's opinion and Dr. Winfrey's entire opinion.

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's appeal from the decision of the Commissioner of Social Security be granted and this matter be remanded for further administrative proceedings.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 19, 2018**

UNITED STATES MAGISTRATE JUDGE